**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| R. DAVID WOLFE, on behalf of himself and all others similarly situated and derivatively on behalf of nominal defendant American Greetings Corporation, | Case No. _____ |
| Plaintiff, | **VERIFIED DERIVATIVE AND CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MORRY WEISS, ZEV WEISS, JEFFREY WEISS, ELIE WEISS, GARY WEISS, JUDITH WEISS, SCOTT S. COWEN, JEFFREY D. DUNN, JERRY SUE THORNTON, WILLIAM E. MACDONALD, MICHAEL J. MERRIMAN, CHARLES A. RATNER, IRVING I. STONE OVERSIGHT TRUST, IRVING STONE LIMITED LIABILITY COMPANY, IRVING I. STONE SUPPORT FOUNDATION, and IRVING I. STONE FOUNDATION, | |
| Defendants, | |
| and | |
| AMERICAN GREETINGS CORPORATION, | |
| Nominal Defendant. | |

Plaintiff R. David Wolfe ("Plaintiff"), by and through his undersigned counsel, upon knowledge as to himself and upon information and belief as to all other matters, alleges as follows:

**NATURE OF THE CASE**

1.      This is a shareholder action brought derivatively on behalf of American Greetings Corporation ("AGC" or the "Company") and as a class action on behalf of the Company's Class

A shareholders in connection with the Company's controlling shareholders' acquisition of AGC (the "Going Private Transaction") for an inadequate price and through a process that was in direct violation of AGC's Amended and Restated Articles of Incorporation (the "AOI").

2.      The Company is controlled by members of the Weiss family, and their affiliated entities (the "Weiss Family Defendants", defined below), who are descendants of Company founder Jacob Sapirstein and collectively hold greater than 50%[1] of the voting power of the Company's capital stock, largely through super-voting Class B common stock that they almost exclusively own.  As controlling stockholders, the Weiss Family Defendants have a duty to ensure that the Going Private Transaction is both financially and procedurally fair to the Company and its minority shareholders, a duty they have failed to satisfy in connection with the negotiation and approval of the Going Private Transaction.

3.      By letter dated September 25, 2012, certain of the Weiss Family Defendants initially proposed to the Company's Board of Directors (the "Board") that they would acquire from the Company's minority shareholders all of the Company's shares that they did not already own for $17.18 per share in cash (the "Proposal").  Pursuant to the Proposal, while minority shareholders would be cashed out at a price that did not reflect the full intrinsic value of the Company, the Weiss Family Defendants would rollover or reinvest substantially all of their

---

[1] The Company has disclosed that the Weiss "Family Shareholders" (defined herein as the Rollover Defendants), which exclude the Irving I. Stone Support Foundation ("Support Foundation") and Irving I. Stone Foundation ("Stone Foundation") that are described in greater detail below, have committed to vote their 43.6% of the Company's voting power in favor of the Going Private Transaction.  However, when combining the Class B holdings of the Support Foundation and the Stone Foundation, of which the members of the Weiss Family are trustees, with certain of the Weiss Family Defendants' "options held by them to purchase Class B Shares that are exercisable within 60 days of April 1, 2013, and the vesting and issuance of certain restricted stock units that will vest within 60 days of April 1, 2013," the Weiss Family Defendants' voting power is greater than 50% of the Company's total voting power as disclosed in the Schedule 13D/A filed by certain of the Weiss Family Defendants on March 29, 2013.

equity stake in the Company post-transaction, reaping the benefit of the Company's prospects for long-term growth.

4.      In response to the Proposal, the Board formed a special committee of four purportedly "independent" directors (the "Special Committee") to consider the Proposal.  The four directors were defendants Scott S. Cowen, Jeffrey D. Dunn, William E. McDonald, III and Michael J. Merriman.  Yet, these directors are hardly independent and most, if not all, of them have significant connections with one or more of the Weiss Family Defendants, making genuine arm's-length negotiations between the Special Committee and the Weiss Family Defendants unachievable.  Moreover, the Company's AOI prohibits directors who are "in any way . . . connected with" the Weiss Family Defendants from approving an interested director transaction such as the Going Private Transaction.[2]  Additionally, the two other purportedly independent directors of the Board that approved the Going Private Transaction, who are not members of the Special Committee, were similarly incapable pursuant to the terms of the AOI of approving the Going Private Transaction because of their connections with the Weiss Family Defendants.  Accordingly, the negotiation and approval of the Going Private Transaction violated the Company's AOI and the Going Private Transaction is void by the AOI's terms.

5.      Recognizing this dilemma at the time the Special Committee had been formed, on November 6, 2012, Plaintiff filed a class action in this Court against the Weiss Family Defendants and the Company seeking, *inter alia*, a declaratory judgment that the Special Committee process employed by the Board did not satisfy the prerequisites of the AOI.  This action, captioned *R. David Wolfe v. Morry Weiss, et al.*, Case No. 1:12-cv-02776-JG (N.D. Ohio), was dismissed by this Court on February 14, 2013 for lack of subject matter jurisdiction.

---

[2] A true and accurate copy of the AOI is attached hereto as Exhibit A.

6.      While the Special Committee deliberated the Proposal, the Weiss Family Defendants leveraged their control of the executive office to advance their takeover bid.  Among other things, on October 18, 2012, the Company announced it would be eliminating the position of Senior Vice President and Executive Supply Chain Officer, one of the few executive positions outside of the Weiss Family's control.  In addition, on November 19, 2012, the Company announced that it had suspended its long-heralded plans to proceed with construction of a new corporate headquarters because of the Weiss Family's pending offer.  By putting the Company's operations and growth on hold, the Weiss Family Defendants were able to keep their acquisition costs down and pressure the Special Committee to accept a deal on their terms.

7.      On March 18, 2013, following the dismissal of his action, Plaintiff wrote a letter to the Chairman of the Board of AGC indicating that while his action may have been dismissed for lack of subject matter jurisdiction, the Special Committee process still violated the AOI and the Board should not pursue a transaction with the Weiss Family Defendants without empanelling a special committee of truly independent directors to negotiate and approve any transaction.[3]

8.      Despite this warning, on April 1, 2013, the Company announced that the Special Committee had recommended, and the Board had approved the Going Private Transaction, whereby the Weiss Family Defendants will purchase the outstanding shares of AGC that they do not already own for $18.20 per share in cash.  The Board's decision to proceed with the Going Private Transaction in spite of Plaintiff's March 18, 2013 letter amply demonstrates that the Board members' "minds are closed to argument and they cannot properly exercise their business

---

[3] A true and accurate copy of Plaintiff's March 18, 2013 letter is attached hereto as Exhibit B.

judgment in determining whether [this] suit should be filed." *See Carlson v. Rabkin*, 152 Ohio App. 3d 672, 680 (Ohio Ct. App. 2003).

9.      In addition to the procedural unfairness of the Special Committee process and its direct violation of the Company's AOI, the price of $18.20 negotiated by the Special Committee with the Weiss Family Defendants is also severely financially unfair.  Plaintiff has hired an expert that has performed a discounted cash flow analysis based on the Company's public financial statements and determined that the fair value of the Company's stock far exceeds the $18.20 transaction price.

10.      Because the Weiss Family Defendants are intent on completing the Going Private Transaction on terms that are not entirely fair to the minority stockholders, and because the Board has breached its fiduciary duties to the Company by forming the Special Committee in violation of the Company's Articles, the Company as well as Plaintiff and the Class (defined below) are entitled to injunctive, declaratory and other equitable relief.

## PARTIES

11.      Plaintiff R. David Wolfe is the owner of AGC Class A common stock and has been the owner of such stock continuously since prior to the wrongs complained of herein. Plaintiff is a citizen of Wisconsin.

12.      Nominal defendant AGC is a corporation duly existing and organized under the laws of Ohio, with its principal executive offices located at One American Road, Cleveland, Ohio 44144.  Founded in 1906 by Jacob Sapirstein, the Company designs, manufactures and sells everyday and seasonal greeting cards and other gift, stationary and party-supply products. The Company operates in four business segments: North American Social Expression Products, International Social Expression Products, AG Interactive and non-reportable operating segments, and generates annual revenue of approximately $1.7 billion.   The Company's authorized capital

stock consists of Class A common shares and Class B common shares.  While the economic rights of Class A and Class B shares are identical, the voting rights differ: Class A shares are entitled to one vote per share and Class B shares are entitled to ten votes per share.  There is no public trading market for the Class B common shares, which are held almost exclusively by the Weiss Family Defendants.  The Company's Class A shares trade on the New York Stock Exchange under the ticker "AM."  The Company has nine directors, three of whom are members of the Weiss family, as set forth below.

13.     Defendant Morry Weiss is the Company's Chairman of the Board, a position he has held since February 1992.  He has been a director since 1971 and currently serves as the Board's Executive Committee Chair.  Morry Weiss joined the Company in 1961, and has previously served as the Company's President, Chief Operating Officer ("COO") and Chief Executive Officer ("CEO").  Morry Weiss is the father of defendants Jeffrey M. Weiss, Zev Weiss, Gary Weiss, and Elie Weiss.  According to the Company's public filings, Morry Weiss has sole power to vote or dispose of 312,666 Class B Shares (after giving effect to the exercise of all options to purchase Class B shares held by him that are exercisable within 60 days of April 1, 2013, and the vesting and issuance of certain restricted stock units that will vest within 60 days of April 1, 2013) and he is expected to reinvest or rollover all his Class B Shares in the Company in connection with the Going Private Transaction.  Upon information and belief, Morry Weiss is a citizen of Ohio.

14.     Defendant Zev Weiss is the Company's CEO, a position he has held since 2003.  He has been a director of the Company since 2003 and is currently a member of the Board's Executive Committee. Zev Weiss is the brother of defendants Jeffrey M. Weiss, Gary Weiss and Elie Weiss, and the son of defendant Morry Weiss.  According to the Company's public filings,

Zev Weiss has sole power to vote or dispose of 532,867 Class B Shares (after giving effect to the exercise of all options to purchase Class B shares held by him that are exercisable within 60 days of April 1, 2013, and the vesting and issuance of certain restricted stock units that will vest within 60 days of April 1, 2013) and he is expected to reinvest or rollover all his Class B Shares in the Company in connection with the Going Private Transaction.  Upon information and belief, Zev Weiss is a citizen of Ohio.

15.     Defendant Jeffrey Weiss is the Company's President and COO, positions he has held since 2003.  He has been a director of the Company since 2003 and is currently a member of the Board's Executive Committee.  Jeffrey Weiss is the brother of defendants Zev Weiss, Gary Weiss, and Elie Weiss, and the son of defendant Morry Weiss.  According to the Company's public filings, Jeffrey Weiss has sole power to vote or dispose of 339,328 Class B Shares (after giving effect to the exercise of all options to purchase Class B shares held by him that are exercisable within 60 days of April 1, 2013, and the vesting and issuance of certain restricted stock units that will vest within 60 days of April 1, 2013) and he is expected to reinvest or rollover all his Class B Shares in the Company in connection with the Going Private Transaction. Upon information and belief, Jeffrey Weiss is a citizen of Ohio.

16.     Defendant Elie Weiss is the brother of defendants Zev Weiss, Jeffrey Weiss, and Gary Weiss and the son of defendant Morry Weiss.  Elie Weiss is engaged in real estate development and is a principal in two restaurant development and operating groups, Paladar Latin Kitchen and Rum Bar, and Province, which have restaurants in Ohio, Maryland, Illinois and Arizona.  According to the Company's public filings, Elie Weiss has sole power to vote and dispose of 23,430 Class B Shares and he is expected to reinvest or rollover all his Class B Shares

in the Company in connection with the Going Private Transaction.  Upon information and belief, Elie Weiss is a citizen of Ohio.

17.     Defendant Gary Weiss is a Vice President of the Company.  Gary Weiss is the brother of defendants Zev Weiss, Jeffrey Weiss, and Elie Weiss, and the son of defendant Morry Weiss.  According to the Company's public filings, Gary Weiss has sole power to vote and dispose of 11,430 Class B Shares and he is expected to reinvest or rollover all his Class B Shares in the Company in connection with the Going Private Transaction.  Upon information and belief, Gary Weiss is a Citizen of Ohio.

18.     Defendant Irving Stone Limited Liability Company ("Stone LLC") is a Cleveland, Ohio-based limited liability company formed primarily as a vehicle to facilitate the business and estate planning goals of the late Irving I. Stone ("Stone").  Mr. Stone held 98% of the membership interest in Stone LLC until his death in 2000.  In 2006, this 98% membership interest was sold to defendants Zev, Jeffrey, Gary and Elie Weiss, and as a result of that transaction each of defendants Zev, Jeffrey, Gary and Elie Weiss now hold membership interests representing 24.5% of the equity of Stone LLC.  The remaining two percent membership interest in Stone LLC is held in equal parts by Judith Stone Weiss, Mr. Stone's daughter, and the Irving I. Stone Oversight Trust ("Oversight Trust").  According to the Company's public filings, Stone LLC beneficially owns and has the sole power to vote and dispose of 1,818,182 Class B Shares and Stone LLC is expected to reinvest or rollover all of its Class B Shares in the Company in connection with the Going Private Transaction.

19.     Defendant Judith Weiss is the wife of defendant Morry Weiss.  Judith Weiss beneficially owns 78,800 Class B Shares and she is expected to reinvest or rollover all her Class

B Shares in the Company in connection with the Going Private Transaction.  Upon information and belief, Judith Weiss is a citizen of Ohio.

20.     Defendants Morry Weiss, Zev Weiss, Jeffrey Weiss, Gary Weiss, Elie Weiss, Judith Weiss and Stone LLC are referred to collectively herein as the "Rollover Defendants." According to the Company's public filings, the Rollover Defendants and defendant Stone Foundation "may be deemed as a group to have acquired beneficial ownership of an aggregate of 3,520,599 Class B Shares, representing approximately 89.1% of the outstanding Class B Shares as of March 27, 2013."

21.     Defendant Oversight Trust is located in Cleveland, Ohio and was created to manage the business and affairs of Stone LLC upon Mr. Stone's death.  The Oversight Trust is governed by its four trustees, defendants Zev, Jeffrey, Gary and Elie Weiss.

22.     Defendant Support Foundation is a foundation incorporated and organized in the state of Ohio and located in Beechwood, Ohio.  The Support Foundation owns 200,000 Class B Shares.  Defendants Morry, Zev, Jeffrey, Gary, and Elie Weiss are trustees of the Support Foundation.

23.     Defendant Stone Foundation is a foundation incorporated and organized in the state of Ohio and located in Cleveland, Ohio.  The Stone Foundation owns approximately 203,964 Class B Shares.  Defendants Morry, Zev, Jeffrey, Gary, and Elie Weiss are trustees of the Stone Foundation.

24.     The Rollover Defendants and defendants Oversight Trust, the Support Foundation, and the Stone Foundation are referred to collectively herein as the "Weiss Family Defendants."

25.     Defendant Scott S. Cowen ("Cowen") has been a director of the Company since 1989 and currently serves on the Board's Audit Committee.  As detailed above, defendant Cowen is also a member of the Special Committee.  Upon information and belief, Cowen is a citizen of Louisiana.

26.     Defendant Jeffrey D. Dunn ("Dunn") has been a director of the Company since 2007 and currently serves on the Board's Audit Committee and Compensation and Management Development Committee.  As detailed above, defendant Dunn is also a member of the Special Committee.  Upon information and belief, Dunn is a citizen of Massachusetts.

27.     Defendant Jerry Sue Thornton ("Thornton") has been a director of the Company since 2000 and currently serves on the Board's Executive Committee, Nominating and Governance Committee, and Compensation and Management Development Committee.  Upon information and belief, Thornton is a citizen of Ohio.

28.     Defendant William E. MacDonald, III ("MacDonald") has been a director of the Company since 2007 and currently serves on the Board's Executive Committee and Nominating and Governance Committee.  As detailed above, defendant MacDonald is also a member of the Special Committee.  Upon information and belief, MacDonald is a citizen of Florida.

29.     Defendant Michael J. Merriman ("Merriman") has been a director of the Company since 2006 and currently serves on the Board's Executive Committee and Nominating and Governance Committee.  As detailed above, defendant Merriman is also a member of the Special Committee.  Upon information and belief, Merriman is a citizen of Ohio.

30.     Defendant Charles A. Ratner ("Ratner") has been a director of the Company since 2000 and currently serves on the Board's Executive Committee and Compensation and Management Development Committee.  Upon information and belief, Ratner is a citizen of Ohio.

31.     Defendants Morry Weiss, Zev Weiss, Jeffrey Weiss, Cowen, Dunn, Thornton, MacDonald, Merriman and Ratner are referred to collectively herein as the "Director Defendants."  The Director Defendants, the Weiss Family Defendants and the Company are sometimes referred to collectively herein as the "Defendants."

32.     By reason of their position as controlling shareholders of the Company, the Weiss Family Defendants have a fiduciary relationship with Plaintiff and the other public shareholders of AGC and owe Plaintiff and the other members of the Class heightened duties of good faith, fair dealing, and loyalty, and to ensure that any self-interested transaction is entirely fair to the Company's minority shareholders.

## JURISDICTION

33.     This Court has subject matter jurisdiction over the derivative claims asserted herein pursuant to 28 U.S.C. § 1332(a) in that complete diversity of citizenship exists between Plaintiff and each of the Defendants and the matter in controversy exceeds $75,000 exclusive of interest and costs, considering that nominal defendant AGC is the real party in interest in the derivative action.

34.     This Court has supplemental jurisdiction over the class action claims asserted herein pursuant to 28 U.S.C. § 1367 in that the class claims are so related to the derivative claims asserted that are within this Court's jurisdiction that they form part of the same case or controversy.

35.     The Court has personal jurisdiction over each of the Defendants because each has sufficient minimum contacts with Ohio to justify that State's exercise of personal jurisdiction over each of them consistent with the laws of Ohio and the United States Constitution.

36.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in and/or had a substantial

effect in this District, and the Defendants have received substantial compensation and other transfers of money in this District by doing business here and engaging in activities having an effect here.

## SUBSTANTIVE ALLEGATIONS

37.     As of March 27, 2013, the Weiss Family Defendants beneficially owned in the aggregate approximately 94% of the Company's outstanding Class B common shares (after giving effect to the exercise by certain of the Weiss Family Defendants of all options held by them to purchase Class B shares that are exercisable within 60 days of April 1, 2013 and issuance of certain restricted stock units that will vest within 60 days of April 1, 2013) which, together with Class A common shares beneficially owned by them, represents more than 50% of the voting power of the Company's capital stock.  As the Company notes in its most recent Annual Report, given their majority voting stake, the Weiss Family Defendants are "able to significantly influence the outcome of shareholder votes, including votes concerning the election of directors, the adoption or amendment of provisions in our Articles of Incorporation or Code of Regulations, and the approval of mergers and other significant corporate transactions…"  The Weiss Family Defendants' voting power "makes it less likely that any other shareholder will be able to affect [the Company's] management or strategic direction" and would likely "delay or prevent a change in [the Company's] management or voting control or its acquisition by a third party."

38.     The control wielded by the Weiss Family Defendants is preserved through the Company's AOI, which provide that a holder of Class B shares may not transfer such shares (except to permitted transferees, a group that generally includes members of the holder's extended family, family trusts and charities) unless the holder first offers the Class B shares to the Company.  Although the Company has historically repurchased the Class B shares when they

have been offered, in the event that the Company does not purchase the shares, Class B shareholders must convert the shares, on a one-to-one basis, into Class A common shares before transferring those shares to anyone other than a permitted transferee.

39. It is under the backdrop of this overt control that defendants Jeffrey and Zev Weiss, on behalf of the Weiss Family Defendants, wrote to the Board on September 25, 2012, setting forth the terms of the Proposal (the "September 25 Letter"). While the $17.18 price per share offered in the Proposal represented a 20% premium to the Company's closing price the day before the proposal was publicly announced, the offer was a paltry 5.4% premium to the Company's closing price less than two weeks prior. In the September 25 Letter, the Weiss Family Defendants described the offer price as "compelling" and noted that it "provides the public stockholders of the company with liquidity and certain value in a highly volatile period in the equity markets."[4]

40. Despite their stated goal to provide the Company's shareholders with "liquidity and certain value in a highly volatile period in the equity markets," the Weiss Family Defendants' concern for minority shareholders extends only so far as it serves the family's interests. Instead of engendering a process that would result in a truly compelling price reflecting the Company's intrinsic value, through a competitive bidding or auction process, the Weiss Family Defendants made it clear that they would not consider strategic alternatives to the Proposal, stating in the September 25 Letter that they have "no current intention to sell all or any significant portion of their shares." It is clear that the Weiss Family Defendants see long-term growth in the Company, and the Proposal was the means for them to unfairly capitalize on that growth at the expense of the minority shareholders.

---

[4] In a subsequent letter to the Special Committee on January 17, 2013, the Weiss Family Defendants increased the offer price by a mere 32 cents per share, a nominal amount still far below the Company's intrinsic value.

41.     In fact, the Company has acknowledged that it has recently pursued strategic actions—at the direction of the Weiss-led company management— that have brought volatility to its earnings in the near term, with the goal of long-term growth.  Specifically in its 2012 Annual Report, the Company notes that "[d]uring 2012, our total revenue, operating results and cash flows were impacted by the multiple strategic actions we executed during the year to support both our short-term and long-term business goals" and that such actions "have brought volatility to our earnings."  Nonetheless, the Company stated that these strategic actions will "help us grow our business over the long term."  Indeed, in an earnings teleconference held with investors and analysts on September 28, 2012, a Morgan Stanley analyst noted "that [the] management team is very bullish on the long-term prospects for the company."

42.     Through their opportunistic proposal, the Weiss Family Defendants positioned themselves to reap the benefits of this long-term growth strategy while the Company's minority shareholders will be cashed out at a price which does not reflect the Company's intrinsic value, and instead reflects the impact of management's strategic initiatives on the current stock price.

**The Board Forms the Special Committee In Violation of the Articles**

43.     The Company's Articles require that any special committee of the Board tasked with authorizing or approving a contract with self-interested directors, such as the Going Private Transaction, must be composed of a majority of directors with no connection whatsoever with any of the self-interested directors pursuing the transaction.  Specifically, Article Seventh of the Articles provides, in part:

> No contract or other transaction entered into by the Corporation shall be affected by the fact that any Director of the Corporation is **in any way** interested in, **or connected with, any party** to such contract or transaction, or himself is a party to such contract or transaction, provided that such contract or transaction shall be approved by a majority of the Directors present at the meeting of the Board or of the Committee authorizing or confirming such contract or transaction, **which**

-14-

**majority shall consist of Directors not so interested or connected**.  (emphasis added)

44.     Nonetheless, on October 19, 2012, the Company issued a press release (the "October 19 Press Release") on its website announcing that the Board had formed the Special Committee comprised of directors Cowen, Dunn, MacDonald and Merriman to consider, among other things, the Proposal.  The Board also authorized the Special Committee to "review and evaluate other options available to the Company."

45.     Although putatively "independent" under stock exchange rules, the Special Committee is actually conflicted in its charge to represent the Company's public shareholders. An examination of the Special Committee members appointed by the Board reveals that at least Cowen, McDonald, and Merriman have several personal and professional connections with one or more of the Weiss Family Defendants.  In fact, the backgrounds of all of the Company's so-called independent directors reveal a web of professional and civic connections between the Weiss Family Defendants, on the one hand, and the non-Weiss directors, on the other hand.

46.     Director Merriman has been a Board member since 2006.  Leading up to his appointment as a director, Merriman served as the Company's Senior Vice President ("Senior VP") and Chief Financial Officer ("CFO") from September 2005 until November 2006.  In his time as an executive at the Company, Merriman developed a close working relationship with defendants Zev, Jeffrey, and Morry Weiss and other senior executives at the Company.  In addition, while he served as the Company's Senior VP and CFO, Merriman received substantial remuneration from the Company, including, but not limited to, a starting salary of $400,000, which was subsequently increased, stock options, and participation in the Company's incentive plan, which had a target percentage of 80% of salary.

47.     In addition to these professional connections, since he became a member of the Board, the Company has consistently contributed to charitable organizations affiliated with Merriman.  For instance, the Company disclosed that in fiscal 2012, under its charitable matching contribution program, the Company made matching contributions of $10,000 to charitable or non-profit organizations on behalf of Mr. Merriman.  In addition, in each of its last four annual proxy statements, the Company disclosed that it made discretionary charitable contributions to charitable organizations where Merriman serves or has served as an executive officer, director or trustee.  Along with defendant Zev Weiss, Merriman is currently a director of Enactus, formerly known as Students in Free Enterprise, a non-profit organization that the Company has given generously to in the past, when prior directors were associated with the entity.  Notably, the Company made donations to Enactus of $135,000, $95,000 and $180,000 in fiscal years 2003, 2004 and 2005, respectively.  Upon information and belief, as chief executive officer and chairman of the Board, respectively, defendants Zev Weiss and Morry Weiss direct the Company's charitable contributions to organizations of their choice.

48.     Director Cowen, the chair of the Special Committee, has been a director of the Company since 1989 and is the longest-serving member of the Board.  He is currently the President of Tulane University, a position he has held since 1998.  Since he has been at Tulane, the Company has made significant donations to the University, including a $15,000 donation in each of fiscal year 2003 and fiscal year 2004 as well as a $500,000 pledge during fiscal year 2006 that was to be paid over a five-year period.  Prior to his affiliation with Tulane, Cowen was a professor of management and dean at Case Western Reserve University, Morry Weiss's alma mater.  Cowen is a director of Forest City Enterprises ("Forest City"), an entity affiliated with defendant Ratner, which has a subsidiary that rents retail store space to the Company.  In

addition, Cowen was previously a director of Jo-Ann Stores, Inc. (a publicly-held specialty store retailer) from 1987 until its sale in 2011.  As documented in the Company's public filings, for at least part of this time, including from 2008 through 2011, Jo-Ann Stores purchased the Company's products.

49.      In addition to these professional connections, in each of its last six annual proxy statements, the Company disclosed that it made discretionary charitable contributions to charitable organizations where Cowen serves or has served as an executive officer, director or trustee.  The Company disclosed that in fiscal 2012, under its charitable matching contribution program, the Company made matching contributions of $10,000 to charitable or non-profit organizations on behalf of Cowen.  Cowen is a former trustee of the Jewish Federation of Cleveland (the "Jewish Federation"),[5] where Defendant Zev Weiss is a trustee and defendant Morry Weiss is a Trustee-for-Life and to which the Company made a donation of $100,000 in 2006.  In addition to the Company's charitable contributions to that organization, the respective tax filings for the Stone Foundation and the Support Foundation reveal that both organizations have supported the Jewish Federation.  In particular, the Support Foundation listed the Jewish Federation as a supported organization in its 2009-2011 IRS Form 990 filings and the Stone Foundation reported charitable contributions to the organization of $200,000 (2008), $473,250 (2009) and $1,108,600 (2010).

50.      Cowen is also a former member of the United Way of Greater Cleveland's ("United Way")[6] Strategic Planning Committee.  Defendant Zev Weiss is currently on the United Way's executive committee and defendant Morry Weiss is currently a board member of that organization.  The Company made charitable contributions to the United Way of $190,000 in

_____

[5] The Jewish Federation of Cleveland was formerly known as the Jewish Community Federation of Cleveland.
[6] United Way of Greater Cleveland was formerly known as United Way Services of Greater Cleveland.

each of fiscal years 2003 and 2004, $225,000 in fiscal year 2005, and $270,000 in fiscal year 2006.

51. Director MacDonald has been a director of the Company since 2007. MacDonald was Vice Chairman and member of the Office of the Chairman of National City Corporation ("National City"), a financial holding company, from 2001 until his retirement on December 31, 2006. Prior to that, MacDonald held various management positions within National City over more than 30 years. Defendant Morry Weiss served as a director of National City Corporation from 1991 until its sale in 2008. Moreover, National City Bank and its affiliates have provided various services to the Company, including: (1) as lender, joint lead arranger, joint bookrunner and the global agent under the Company's revolving credit facility; (2) as an underwriter in the Company's May 2006 offering of $7^{3/8}$% senior notes due 2016; and (3) as the Company's transfer agent.

52. In addition to these professional connections, MacDonald has numerous civic affiliations in common with the Weiss family, including: (1) his position as a Trustee Emeritus for ideastream, a Cleveland non-profit organization affiliated with WVIZ/PBS, where defendant Jeffrey Weiss is a member of the organization's Chair's Council; (2) his membership on the board of the Cleveland Clinic Foundation, where defendant Morry Weiss is a member of the Board of Trustees; and (3) his membership on the board of the United Way, an entity AGC has contributed to in the past and where Zev Weiss is a member of the Executive Committee and, according to the Company's website, Morry Weiss is a director. The Company has made numerous charitable contributions to the Cleveland Clinic Foundation over the years, including a $200,000 pledge in fiscal year 1998 and a $1,000,000 pledge in fiscal year 2004, each to be paid over a ten-year period. Moreover, in each of its last six annual proxy statements, the Company

disclosed that it made discretionary charitable contributions to charitable organizations where MacDonald serves or has served as an executive officer, director or trustee.

53.     Director Dunn is the Former President and CEO of HIT Entertainment Limited ("HIT") where he served from 2008 until the company was sold in 2012.  Prior to the sale, Dunn held a 5% equity stake in HIT.  As acknowledged in AGC's public filings, from 2008 through 2012, during the time that he was both CEO and a 5% equity stakeholder in HIT and a director of AGC, the Company licensed certain character properties from HIT in the ordinary course of its business.

**The Other "Independent" Directors Have Substantial Connections with the Weiss Family**

54.     Though the Board's mandate to the Special Committee was to "consider" the Proposal, there is nothing in the Company's October 19 Press Release or in any of its other public disclosures concerning the Proposal or the Going Private Transaction stating that the Special Committee was empowered to independently authorize or approve the Weiss Family Defendants' Proposal.  Accordingly, as detailed herein, the other non-Weiss Board members who are not on the Special Committee also had to approve and authorize the Going Private Transaction.  Yet, those directors are also connected with one or more of the Weiss Family Defendants.

55.     Defendant Ratner is Chairman of the Board of Forest City, a company his ancestors founded.  Ratner is a former president and CEO of Forest City and maintains a greater than 10% stake in the Company.  As disclosed in the Company's public filings, a subsidiary of Forest City rents retail store space in various shopping malls to the Company pursuant to lease agreements entered into in the ordinary course of business.  Total payments made by the Company to Forest City (or its subsidiaries) totaled $1,578,507, $1,530,078 and $1,184,423 for the fiscal year ended February 29, 2004, the fiscal year ended February 28, 2005, and the fiscal

year ended February 28, 2006, respectively, and these payments included payments for rent, water, common area expenses, dues, electricity, heating, ventilation and air conditioning, media, storage, real estate tax and waste removal.

56.     Moreover, Mr. Ratner has a 10% indirect ownership interest, through a trust, in a Cleveland, Ohio shopping mall that leased space to the Company for one retail store.  During fiscal 2010, 2011 and a portion of fiscal 2012, that shopping mall was managed by RMS Investment Corporation ("RMS").  Each of Mr. Ratner's four children has a 4.28% ownership interest in RMS.  In addition, Ratner is a former director of the Cole National Corporation, which has provided vision care health benefits to AGC employees.

57.     In addition to these professional connections, in each of its last six annual proxy statements, the Company disclosed that it made discretionary charitable contributions to charitable organizations where Ratner serves or has served as an executive officer, director or trustee.  The Company has also previously disclosed contributions to numerous charities connected to both Ratner and the Weiss Family Defendants.  For instance, the Company made charitable contributions to the Cleveland Orchestra of $10,000, $20,000 and $20,000 in fiscal years 2003, 2004 and 2005, respectively.  Mr. Ratner is a member of the board of trustees of the Musical Arts Association, the parent organization of the Cleveland Orchestra and defendant Morry Weiss is, likewise, "involved with" the Cleveland Orchestra according to Company filings.  The Company also made contributions of $37,500 in each of fiscal years 2003 and 2004, $49,500 in fiscal year 2005, and $102,000 in fiscal year 2006 to the Greater Cleveland Partnership, when Ratner and fellow director defendant Thornton served on its board of trustees.  Ratner is still a board member of that organization alongside defendant Zev Weiss.

58.     The Company has also made charitable contributions to the Jewish Federation when Ratner was a member of the board of trustees of that organization (*see supra ¶* 49).  He is currently a Trustee-for-Life and a member of the executive committee of the Jewish Federation.  Defendant Zev Weiss is a trustee of the Jewish Federation and defendant Morry Weiss is a Trustee-for-Life of the organization.  In addition, in 1998, defendant Morry Weiss and Ratner co-chaired a 40-person delegation of Northeast Ohioans who participated in a trip to Israel sponsored by the Jewish Federation.  The Company also made donations to the United Way when Ratner was a member of the board of trustees (*see supra ¶* 50).   He is currently on the organization's executive committee alongside defendant Zev Weiss.   In addition to the aforementioned connections, upon information and belief, Ratner and the Weiss Family Defendants also share a personal bond.  On at least one occasion, defendant Morry Weiss has publicly reflected upon his close and long-term personal relationship with Ratner's father, Max Ratner.

59.     Defendant Thornton has been a director of the Company since 2000.  She is president of Cuyahoga Community College (the "College").  During its fiscal year 2000, around the time Thornton joined the Board, the Company made a $1 million pledge to the Tri-C Foundation, an entity that engages in fundraising for the College.  The pledge was to be paid over a seven-year period.  In addition, in or around 2001, the Company partnered with the College to create the school's Visual Communications Center.  The Company also made a $25,000 contribution to the Tri-C "JazzFest" in 2006.  In addition to her work as a college president, Thornton serves on the board of directors of Applied Industrial Technologies, Inc., an entity from which the Company purchased products and services, as disclosed in AGC's last six annual proxy statements.  Thornton also served as a board member of National City from 2004

until that company's sale in 2008, alongside defendants Morry Weiss and MacDonald.  As alleged in *supra* ¶ 51, National City provided substantial services to the Company.

60.     Thornton serves as a director of the United Way and as the Corporate Secretary of the Greater Cleveland Partnership, organizations that are affiliated with the Weiss family and that the Company has given generously to in the past (*see supra* ¶¶ 50, 57).  In addition, the Company has disclosed in each of its last six annual proxy statements that it made discretionary charitable contributions to organizations where Thornton serves or has served as an executive officer, director or trustee.  The Company also disclosed that in fiscal 2012 it made matching contributions of $10,000 to charitable or non-profit organizations on behalf of Thornton under its charitable matching contribution program.  Thornton was also a part of the 40-person delegation chaired by defendant Morry Weiss and Ratner who participated in a trip to Israel sponsored by the Jewish Federation in 1998.

61.     Due to the myriad connections between the Weiss family and most, if not all, of the non-Weiss members of the Board, including at least three of the four Special Committee members, the Board's purportedly independent directors are unable to properly approve, authorize or confirm the Going Private Transaction as is required under the Company's AOI. Article Seventh of the AOI is designed, at least in part, to ensure that self-interested transactions by the Weiss Family Defendants are approved by persons with no connection in any way to the Weiss Family Defendants.  The Special Committee's composition, however, with several connections between its members and the Weiss family, makes compliance with the AOI's dictates impossible.  Defendants Ratner and Thornton are similarly incapable of providing the requisite approval.

62.     Moreover, even if the Special Committee had been capable of properly approving the Going Private Transaction pursuant to the AOI, the Committee's authority to "review and evaluate other options available to the Company" as stated in the Company's October 19 Press Release, is essentially meaningless.  The Weiss Family Defendants have made it clear that they will not consider strategic alternatives to the Proposal and have "no current intention to sell all or any significant portion of their shares."  Thus, armed with a majority stake in the Company, the Weiss Family Defendants have the ability to reject any alternative to the Going Private Transaction if it does not suit the Weiss family's interests.

63.     Instead of working to protect the Company's interests, the Board kowtowed to the Weiss Family Defendants by forming the deeply conflicted Special Committee in direct violation of the AOI and providing that committee with a limited, ineffective mandate.  As detailed herein, the full Board, excluding the Weiss Family members of the Board, approved the Going Private Transaction in violation of the AOI.  For their part as the Company's controlling shareholder, the Weiss Family Defendants failed to ensure that the Going Private Transaction was negotiated at arm's-length through a fair process designed to protect the minority stockholders' interests from the controlling shareholders' self-interest.  As a result, and in the absence of Court intervention, the Company and its minority shareholders have suffered and will continue to suffer substantial and irreparable harm.

**The Special Committee Accedes to the Weiss Family and the Board Approves the Going Private Transaction Which Is Neither Financially Nor Procedurally Fair**

64.     On April 1, 2013, AGC announced that the Company "has signed a definitive agreement under which a newly organized entity owned by the Weiss Family, including the Company's Chairman, Morry Weiss; Director and CEO, Zev Weiss; and Director, President and COO, Jeffery Weiss and related persons and entities, will acquire the Company."  Under the

terms of this Agreement and Plan of Merger dated March 29, 2013 (the "Merger Agreement"), "American Greetings Class A and Class B shareholders, excluding the Weiss Family and related entities, will receive $18.20 per share in cash, and, ***if declared by the Board of Directors***, one regular quarterly dividend of $0.15 per share declared and payable in a manner consistent with the Company's past practice." (emphasis added). According to the Company's press release, the Special Committee "completed a review of the proposal, considered alternatives, negotiated the price and other transaction terms with the Weiss Family," and then unanimously recommended the Board approve the Merger Agreement, which the Board did while the Weiss family directors recused themselves from the vote.

65.     The Going Private Transaction values AGC at approximately $878 million, including the assumption of the Company's $7^{3/8}$% notes due 2021, which will remain outstanding after the transaction, the repayment of borrowings under the Company's revolving credit facility and the settlement of stock options not held by the Weiss Family. The Going Private Transaction is expected to close in July 2013.

66.     The $18.20 transaction price represents less than a 6% premium to the original Proposal price of $17.18, and a mere 4% premium to the voluntary increase to $17.50 proposed by the Weiss Family in a letter to the Special Committee dated January 17, 2013. Moreover, after performing a discounted cash flow analysis, Plaintiff's financial expert has determined that the fair value of AGC common stock is far in excess of the $18.20 per share offered as consideration in the Going Private Transaction.

67.     Despite the representations of the Special Committee's negotiations in the April 1, 2013 press release, the length in time between the initial Proposal by the Weiss Family Defendants and the announcement of the Going Private Transaction appears to be much less

associated with any hard-fought negotiations by the Special Committee, but rather an inability by the Weiss Family to secure adequate financing for the Going Private Transaction.  For example, on December 5, 2012, the Weiss Family Defendants sent an unsolicited letter to the Special Committee for the purpose of updating the Committee on the financing status of the Proposal. Therein, the Weiss Family Defendants stated that "it is currently expected that Bank of America, N.A., KeyBank National Association, Macquarie Capital (USA), Inc. and PNC Bank, National Association would commit to provide an aggregate principal amount equal to $742 million . . . ." However, pursuant to the terms of the Going Private Transaction, the Weiss Family Defendants were only able to secure $600 million in financing from a combination of the preceding lenders and, additionally, Deutsche Bank AG New York Branch.  In addition, the Weiss Family was forced to incur a $240 million non-voting preferred stock investment by Koch AG Investment LLC, a subsidiary of Koch Industries, Inc. in order to finance the Going Private Transaction.

68.    Moreover, the purported procedural protections for AGC shareholders in connection with the Merger Agreement, as touted by the April 1, 2013 press release and the accompanying Form 8-K filed with the Securities and Exchange Commission, are nothing more than window dressing.  Section 5.3 of the Merger Agreement contains a strict no-solicitation provision or "no-shop" provision, which prevents the Company from soliciting alternative acquisition proposals from third parties and to provide information to, and participate in discussions and engage in negotiations with, third parties regarding alternative acquisition proposals.  While this "no-shop" provision is subject to a customary "fiduciary-out" which allows the Company under certain circumstances to engage in negotiations with potential superior bidders, there is virtually no chance of this happening due to the voting bloc of the Rollover Defendants.  The Rollover Defendants have entered into a Guaranty and Voting

Agreement (the "Voting Agreement") which commits 43.6% of the Company's voting power in support of the Going Private Transaction.  Thus, even if the Board were to examine potential superior proposals, the Board would not be able to exercise its fiduciary out because the likelihood of another offer closing is minimal in light of the Weiss Family Defendants' public statements that they have no intention of selling their interest in the Company.  Without a high likelihood of closing, competing offers cannot be considered superior proposals and trigger the Board's fiduciary out under the Merger Agreement.

69.     Moreover, the Voting Agreement does not even account for the 403,964 Class B shares held by the Stone Foundation and the Support Foundation, which are also under the control of the Weiss Family Defendants and obviously will be voted in favor of the Going Private Transaction, and would be voted against any alternative transaction.

70.     While the Merger Agreement purports to include a "majority-of-the-minority" shareholder vote provision in order to approve the Merger Agreement it is a sham because Section 6.1 of the Merger Agreement indicates that it is waivable by the Company.  The fact that the "majority-of-the-minority" vote provision is not required to approve the Going Private Transaction is further enforced by Section 3.19 of the Merger Agreement, which states that: "The affirmative vote of the holders of issued and outstanding Class A Common Shares and Class B Common Shares, voting together as a single class, representing at least two-thirds of all the vote entitled to be cast thereupon by holders of Class A Common Shares and Class B Common Shares is the only vote of holders of securities of the Company that is required to adopt this Agreement under applicable Law and the Company's governing documents."

71.     Even if not waivable, the "majority-of-the-minority" vote provision still permits the shares held by the Stone Foundation and the Support Foundation to be voted in conjunction

with the Company's minority shareholders, calling into question its effectiveness. Accordingly, the Going Private Transaction is ostensibly a *fait accompli*, because the "majority-of-the-minority" vote requirement is waivable, and between the Weiss Family Defendants' voting power and the voting power of the Company's other officers and directors they have virtually assured that they will reach the requisite two-thirds majority vote when the Class A and Class B shares vote together as a single class on whether to approve the Merger Agreement.

72.     As the preceding demonstrates, the Going Private Transaction is neither financially or procedurally fair to the Company or AGC's minority shareholders.

## **CLASS ACTION ALLEGATIONS**

73.     Plaintiff brings this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all current Class A common stockholders of the Company (the "Class"). Excluded from the Class are the defendants and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendants, including any executive officers of the Company.

74.     This action is properly maintainable as a class action.

75.     The Class is so numerous that joinder of all members is impracticable. As of March 27, 2013, there were 29,008,278 Class A common shares outstanding.

76.     There are questions of law and fact that are common to the Class, including, *inter alia*, the following:

(a)     whether Plaintiff and the other members of the Class would be irreparably damaged if the Going Private Transaction is consummated;

(b)     whether the Special Committee was able to approve, authorize or confirm the Going Private Transaction in accordance with the Company's AOI;

(c)     whether the members of the Board breached their fiduciary duties to Plaintiff and the other members of the Class by approving the Going Private Transaction in violation of the Company's AOI;

(d)     whether the Weiss Family Defendants as controlling shareholders of the Company have breached their fiduciary duties to Plaintiff and the other members of the Class;

(e)     whether the Class is entitled to injunctive or other equitable relief as a result of Defendants' wrongful conduct.

77.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.   Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

78.     A class action is superior to other available methods for the fair and efficient adjudication of this shareholder action.  Indeed, the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.   In addition, Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief and other equitable relief on behalf of the Class as a whole is appropriate.

## **DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS**

79.     Plaintiff brings this action derivatively in the right of and for the benefit of the Company to redress the Director Defendants' breaches of fiduciary duties.

80.     Plaintiff is a shareholder of AGC, was a shareholder of AGC at the time of the wrongdoing alleged herein, and has been a shareholder of the Company continuously since that time.

81.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting the Company's rights.

82.     As a result of the facts set forth herein, Plaintiff has not made any demand on the Board to institute this action against the Defendants.  Such demand would be a futile and useless act because the facts alleged herein demonstrate that the "directors' minds are closed to argument and they cannot properly exercise their business judgment in determining whether the suit should be filed." *Carlson*, 152 Ohio App. 3d at 380.

83.     Obviously, Morry, Zev and Jeffrey Weiss are directly interested in the Going Private Transaction and cannot be expected to disinterestedly consider a demand fairly. Additionally, the remaining Director Defendants who approved the Going Private Transaction in violation of the Company's AOI are necessarily antagonistic to any demand that Plaintiff would have made to take action to void the Going Private Transaction and empanel a proper special committee that could have satisfied the requirements of approval of an interested director transaction under the Company's AOI, and were themselves involved in approving the Going Private Transaction that Plaintiff now challenges as violating the Company's AOI.

84.     Moreover, the Director Defendants are substantially likely to be held liable for breaching their fiduciary duties by approving the Going Private Transaction in violation of the AOI, rendering their ability to disinterestedly consider a demand to take action against themselves futile.  As such, the entire Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

85.     In addition, the Director Defendants have already demonstrated that any demand to take action would be futile.  First, the Proposal and the prohibited formation of the Special Committee was already the subject of Plaintiff's prior lawsuit filed with this Court on November 6, 2012 ("Plaintiff's Previous Action").  As such, the Board has been on notice of Plaintiff's allegations concerning the Proposal and, more specifically, Plaintiff's allegation that the Board formed the Special Committee in violation of the AOI.  Nearly four months have elapsed since the Board first became aware of Plaintiff's allegations concerning the Special Committee and yet the Board has done nothing to remedy their violation of the AOI.

86.     Moreover, upon the dismissal of Plaintiff's Previous Action, Plaintiff sent the March 18, 2013 letter to the Board advising them that the Special Committee process violated the Company's AOI and that the Board should not pursue a transaction with the Weiss Family unless it was approved by independent directors who had no connections with the Weiss Family.  The Board's response to Plaintiff's March 18, 2013 letter was to announce the Going Private Transaction two weeks later.  The Board's inability to independently and disinterestedly consider a demand was emphasized by a letter from Company counsel dated April 3, 2013 that stated: "The allegations contained in your letter were addressed in the briefs and other materials filed by the defendants in [Plaintiff's Previous Action].  American Greetings' position remains as stated in those pleadings."[7]  Thus, demand upon the Board is futile.

87.     Demand upon the Board is also futile because it would necessarily result in the representations and warranties of the Company in the Merger Agreement to be false.  Specifically, Section 3.3(c) of the Merger Agreement states that: "The execution and delivery by the Company of this Agreement does not, and the consummation of the Transactions and

---

[7] A true and accurate copy of Company counsel's April 3, 2013 letter is attached hereto as Exhibit C.

compliance with the provisions hereof by the Company will not, (i) conflict with or result in any violation of any provision of the Charter Documents of (A) the Company or (B) any of its Subsidiaries . . . ."  The Merger Agreement defines Charter Documents as the Company's and each of its subsidiaries' "articles of incorporation, regulations or similar organizational documents, each as amended to date."  So the Board, by approving the Merger Agreement, has already represented that the Company's execution and delivery of the Merger Agreement that was based on Board approval of the Going Private Transaction in contravention of the AOI does not violate the AOI.  Therefore, demand upon the Board is futile.

## COUNT I

### Claim For Declaratory Relief Concerning the Special Committee and Board Approval of the Going Private Transaction

88.     Plaintiff repeats and re-alleges all previous allegations as if set forth at full herein.

89.     According to the Company's October 19 Press Release, in response to the Proposal, the Company formed a Special Committee consisting of four putatively "independent" directors to "consider" the Weiss Family Defendants' proposal to acquire the shares of the Company's minority stockholders.

90.     Pursuant to the provisions of Article Seventh of the AOI, the Special Committee, or any other group of Company directors asked to authorize the Proposed Transaction, cannot consist of a majority of "Directors …[in any way] connected" with "any" of the Weiss Family Defendants.

91.     At least three of the four members of the Special Committee have connections with one or more of the Weiss Family Defendants that renders the Special Committee incapable of authorizing, confirming, or approving a transaction such as the Going Private Transaction. The other purportedly independent directors likewise have connections with one or more of the

Weiss Family Defendants, which renders them incapable of authorizing, confirming or approving the Going Private Transaction.

92.     Plaintiff seeks a declaration from the Court that the Special Committee and the Board is incapable of approving, authorizing or confirming, in accordance with the AOI, the Going Private Transaction.

93.     Plaintiff further seeks a declaration from the Court that the Company's Board, as currently constituted, is incapable of forming a committee comprising a majority of disinterested and non-connected directors under Article Seventh of the AOI to authorize or confirm a transaction with the Weiss Family Defendants such as the Going Private Transaction.

## COUNT II

### Derivative Claim Against the Director Defendants for Breach of Fiduciary Duty for Violating the AOI

94.     Plaintiff repeats and re-alleges the allegations above as if set forth at full herein.

95.     As directors of the Company, the Director Defendants owe the Company the fiduciary obligations of loyalty, good faith, and due care.

96.     The Company's Amended and Restated Articles of Incorporation require that any special committee of the Board formed to authorize or approve a transaction with self-interested directors or Board approval of a transaction with self-interested directors must be composed of a majority of directors with no connection whatsoever with any of the self-interested directors pursuing the transaction.

97.     By empanelling the Special Committee, comprised of defendants Cowen, Dunn, Merriman, and MacDonald, the Director Defendants violated the plain terms of the AOI by entrusting the consideration of the Proposal to directors who have numerous connections with the self-interested directors, to wit, Morry, Zev, and Jeffrey Weiss.  As constituted, the Special

Committee was incapable of approving a transaction with the Weiss Family Defendants under the terms of the AOI.

98.     The non-Weiss Family Director Defendants further breached their fiduciary duties to the Company by approving the Going Private Transaction as they failed to adhere to the AOI's clear requirements for the review and approval of self-interested transactions such as the Going Private Transaction.

99.     The Director Defendants' violation of the AOI harmed the Company and continues to harm the Company for so long as the Going Private Transaction remains subject to consummation.

100.     Accordingly, the Company is entitled to appropriate equitable and injunctive relief and damages.

## COUNT III

### Derivative Claim Against the Weiss Family Defendants for Breach of Fiduciary Duty

101.     Plaintiff repeats and re-alleges the allegations above as if set forth at full herein.

102.     As the controlling shareholders of AGC, the Weiss Family Defendants owe Plaintiff and the Company heightened duties of good faith, fair dealing, and loyalty, obligations which demand that their decisions be made for the welfare, advantage, and best interests of the Company and the shareholders as a whole, not just for their own self-interest.  Stated differently, the Weiss Family Defendants must ensure that any self-interested transaction is entirely fair to the Company and its minority shareholders.

103.     In breach of these obligations, the Weiss Family Defendants proposed and negotiated the Going Private Transaction through which the Weiss Family Defendants will acquire the minority shareholders' interests at a price that does not reflect the intrinsic value of the Company.

104.    In further breach of their obligations, the Weiss Family Defendants have failed to ensure that a fair process was in place to ensure genuinely arms-length negotiations in connection with the Going Private Transaction, or otherwise protect the interests of the Company and AGC's minority shareholders.  Additionally, the Weiss Family Defendants permitted the Board to form a Special Committee and engender a Board approval process of the Going Private Transaction that violated the Company's AOI, which was specifically designed to protect the Company and its stockholders from abusive interested transactions by directors of the Board.

105.    The Company has suffered and will suffer substantial harm as a result of the Weiss Family Defendants' conduct.

106.    Absent the injunctive, declaratory and other equitable relief sought here, the Weiss Family Defendants' actions will continue to harm Plaintiff and the Company.

## COUNT IV

### Class Action Claim Against the Weiss Family Defendants for Breach of Fiduciary Duty

107.    Plaintiff repeats and re-alleges all previous allegations as if set forth at full herein.

108.    As the controlling shareholders of AGC, the Weiss Family Defendants owe Plaintiff and the other members of the Class heightened duties of good faith, fair dealing, and loyalty, obligations which demand that their decisions be made for the welfare, advantage, and best interests of the Company and the shareholders as a whole, not just for their own self-interest. Stated differently, the Weiss Family Defendants must ensure that any self-interested transaction is entirely fair to the minority Class A shareholders.

109.    In breach of these obligations, the Weiss Family Defendants have proposed and negotiated a self-interested transaction with the Company's Board through which the Weiss Family Defendants will acquire the minority shareholders' interests at a price that does not reflect the intrinsic value of the Company and the Class A minority shareholders' stock.

-34-

110.    In further breach of their obligations, the Weiss Family Defendants failed to ensure that a fair process was in place to ensure genuinely arms-length negotiations on behalf of the minority shareholders, or otherwise protect the interests of the Company's minority shareholders.

111.    As a result of the Weiss Family Defendants' breach of their fiduciary duties, Plaintiff and the Class have suffered and will suffer substantial harm.

112.    Absent the injunctive, declaratory and other equitable relief sought here, the Weiss Family Defendants' actions will continue to harm Plaintiff and the Class.

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive, declaratory and other equitable relief, in its favor and in favor of the Company and the Class and against Defendants, as follows:

a.      Declaring that a demand to bring this action is futile and is excused;

b.      Declaring that the Director Defendants breached their fiduciary duties to the Company, and granting appropriate equitable relief and/or damages to remedy such breaches of fiduciary duty.

c.      Declaring that this action is properly maintainable as a class action;

d.      Declaring that the Going Private Transaction represents a breach of the Weiss Family Defendants' fiduciary duties, including duties of loyalty and entire fairness, as the Company's controlling shareholder;

e.      Declaring the meaning, interpretation and applicability of the AOI with respect to the Special Committee and any committee or group of Company directors formed for the purposes of approving any transaction with the Weiss Family Defendants such as the Going Private Transaction;

f. Declaring that the Special Committee and the Board were incapable under the AOI of approving the Going Private Transaction;

g. Declaring the Going Private Transaction void as it violates the AOI;

h. Enjoining Defendants from consummating the Going Private Transaction or any other acquisition by the Weiss Family Defendants or their related or affiliated entities unless and until the Company adopts and implements a procedure or process whereby a truly independent special committee is established in accordance with the AOI to conduct genuine arm's-length negotiations with the Weiss Family Defendants and act independently of the full Board in that regard;

i. Declaring invalid and unenforceable any disclosed or undisclosed agreements between the Company and the Weiss Family Defendants with respect to the Going Private Transaction;

j. Ordering rescission, rescissory damages, or other equitable relief should the Going Private Transaction be consummated;

k. In the event the Going Private Transaction is permitted to proceed, awarding damages to the Company's minority shareholders who received less than the fair value of their shares in the Going Private Transaction as a result of Defendants' breaches of fiduciary duty;

l. Awarding Plaintiff attorneys' fees and costs and expenses in connection with this action; and

m. Granting such other and further relief as this Court deems just and proper.

Dated: April 17, 2013                Respectfully submitted,

**s/Hugh D. Berkson**
Hugh D. Berkson (0063997)
Jeffrey S. Moeller (0074512)
Anthony J. Hartman (0021226)
Attorneys for Plaintiff
HERMANN, CAHN & SCHNEIDER, LLP
1301 East Ninth Street, Suite 500
Cleveland, OH 44114
Tel: 216-781-5515
Fax: 216-781-1030
hberkson@hcsattys.com
jmoeller@hcsattys.com
ahartman@hcsattys.com

KESSLER TOPAZ
MELTZER & CHECK, LLP
Lee Rudy
Michael Wagner
J. Daniel Albert
J. Quinn Kerrigan
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056
lrudy@ktmc.com
mwagner@ktmc.com
dalbert@ktmc.com
qkerrigan@ktmc.com
*(Counsel was previously admitted pro hac vice
in related case No. 1-12-cv-02776-JG)*

GLANCY BINKOW & GOLDBERG LLP
Michael M. Goldberg
Louis Boyarsky
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
(310) 201-9150
(310) 201-9160
mmgoldberg@glancylaw.com
lboyarsky@glancylaw.com
*(Counsel was previously admitted pro hac vice*

*in related case No. 1-12-cv-02776-JG)*

LAW OFFICES OF HOWARD G. SMITH
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
(215) 638-4847
(215) 638-4867
legul2010@aol.com
*(Counsel was previously admitted pro hac vice
in related case No. 1-12-cv-02776-JG)*

## JURY TRIAL DEMANDED

Trial by jury is hereby demanded to maximum extent permitted by law.

Dated: April 17, 2013

**s/Hugh D. Berkson**
Hugh D. Berkson (0063997)
Jeffrey S. Moeller (0074512)
Anthony J. Hartman (0021226)
Attorneys for Plaintiff
HERMANN, CAHN & SCHNEIDER, LLP
1301 East Ninth Street, Suite 500
Cleveland, OH 44114
Tel: 216-781-5515
Fax: 216-781-1030
hberkson@hcsattys.com
jmoeller@hcsattys.com
ahartman@hcsattys.com